24 So.2d 69

Succession of HOLLANDER.

No. 37902.

Nov. 5, 1945.

James G. Schillin, of New Orleans, for plaintiffs and relators.

Walter B. Hamlin, of New Orleans, for Mrs. Dorothy Blossman Hollander, respondent.

ROGERS, Justice.

Harry G. Hollander died testate in the City of New Orleans on March 1, 1945. He was married twice, first to Mrs. Inez Oliveira Hollander, from whom he was divorced and, secondly to Mrs. Dorothy Blossman Hollander, who survived him. He was also survived by two sons, Harry G. Hollander, Jr., and George R. Hollander, issue of his marriage to Mrs. Inez Oliveira Hollander. In his will, executed in nuncupative form by public act, the defendant bequeathed to his widow, Mrs. Dorothy Blossman Hollander, the disposable portion of his estate and also named her as testamentary executrix. Letters testamentary were issued to her on March 12, 1945.

On March 17, 1945, Harry G. Hollander, Jr., and George R. Hollander, decedent's

sons by his first marriage and residents of the State of California, brought suit against Mrs. Dorothy Blossman Hollander seeking to obtain a judgment recognizing plaintiffs as the forced heirs of Harry G. Hollander and, as such, entitled to receive one-half of the property left by him; annulling the marriage contract entered into between Mrs. Dorothy Blossman Hollander and her deceased husband, Harry. G. Hollander; declaring to be community property all of the property acquired by the decedent and the defendant since their marriage; and ordering the property to be returned to the succession; or, in the alternative, that it be decreed to be the separate property of the decedent and one-half thereof ordered to be paid to plaintiffs. Hollander-D'Aquin, Inc., a corporation organized under the laws of this State, was made a party defendant. Plaintiffs prayed for a temporary restraining order and an injunction to restrain Mrs. Dorothy Blossman Hollander and Hollander-D'Aquin, Inc., from disposing of any property placed· in the name of Mrs. Hollander by her deceased husband. The restraining order was granted and the defendants were ordered to show cause why a preliminary injunction should not be issued. Plaintiffs' suit was dismissed on an exception of no right or cause of action and plaintiffs applied to this Court for writs to obtain a review of the judgment.

A rule nisi, accompanied by a stay order, was issued and the matter is now before us for decision.

Plaintiffs' demand is embraced in an original and a supplemental petition. Briefly stated, plaintiffs allege that they are the children and forced heirs of the decedent, Harry G. Hollander, and entitled to inherit jointly one-half of his estate; that their father tried to disinherit them, but having no lawful cause therefor conceived the plan of placing the property in the name of his second wife, the defendant herein, in order that it might nominally appear that he had no estate, or a very negligible one, upon his death; that in pursuance of this scheme decedent, aided and abetted by the defendant, entered into a marriage contract by a notarial act dated November 29, 1935, which contract was duly recorded in the mortgage office of the Parish of Orleans, and they were married thereafter on December 7, 1935; that thereupon decedent placed in defendant's name 72½ shares of the capital stock of Hollander-D'Aquin, Inc., retaining in his own name only 2½ shares of the corporation; that the matrimonial community owned not only the 72½ shares of stock in Hollander-D'Aquin, but also owned a certain piece of real estate situated on Gayoso Street in the square bounded by Salcedo, Vincent and Elk Streets, in the Sixth District of New Orleans; that the stock and real estate while placed in defendant's name were purchased and paid for by decedent with community funds and hence belong to the community; that at the time the alleged marriage contract was executed and decedent and defendant were married, defendant had no property, nor was any property or other thing of value brought into the marriage by her, and that the decedent and the defendant executed the pretended marriage contract for the purpose of defrauding plaintiffs of their rights.

Plaintiffs allege in their supplemental petition that the matrimonial community was in existence because the decedent and the defendant, in filing their income tax returns, reported all the property owned by them as community property and that defendant is, therefore, estopped from making any claim under the marriage contract. In the alternative, plaintiffs allege that in the event the marriage contract should be maintained and the property be held not to be community property, then that all of the property acquired in the name of either decedent or defendant be declared to belong to decedent as his separate property. In their petitions plaintiffs pray for the relief which we have hereinabove set forth.

The law provides that every marriage contracted in this State superinduces of right partnership or community of acquets and gains, if there be no stipulation to the contrary. Civ.Code, Art. 2399.

The parties may, by the marriage contract, modify or limit the community, or they may stipulate that there shall be no community whatever. Civ.Code, Art. 2332.

■ In entering into the marriage contract the decedent and the defendant followed the textual provisions of the Code. The contract, therefore, was lawful and proper and one which the parties had the right to make. Nowhere in plaintiffs' petition are any specific facts set forth giving it a different character. On the contrary, it is affirmatively disclosed by the allegations of the petition that the marriage contract was entered into before the marriage of the parties and that the contract itself is regular in form and substance.

The mere assertion by plaintiffs that the decedent and the defendant committed a fraudulent act by entering into a contract which they were empowered by law to make does not in itself authorize the annulment of the contract.

■ Nor does the fact, as alleged by plaintiffs, that the decedent and the defendant filed their income tax returns as if the matrimonial community was in existence have the effect of restoring the community which was renounced under the terms of the marriage contract. Plaintiffs have no interest in the manner in which the parties returned their incomes for the purpose of taxation. That is a matter which concerns the Federal and State Governments alone and can have no bearing on the issues involved in this case.

■ The gravamen of plaintiffs' complaint is contained in Article X of their supplemental petition, which reads as follows: "That the said stock and real estate, while placed in defendant's name, were purchased and paid for by decedent with community funds, and hence belong to the community." Plaintiffs' contention is that the act of their deceased father, Harry G. Hollander, in causing the stock and real estate to be placed in the name of his wife, Mrs. Dorothy Blossman Hollander, when he was, in fact, the purchaser with community funds, was a simulation, and that plaintiffs are entitled to uncover the simulation by parol evidence under the provisions of Article 2239 of the Civil Code, providing that forced heirs may attack the contract or transfer made by their ancestors as a simulation, and to recover the property

for the succession in order to protect their rights therein.

Plaintiffs do not seek to defeat the purchase of the stock and real estate in the name of Mrs. Dorothy Blossman Hollander. They seek merely to make it enure to the benefit of their ancestor's estate in order to protect their alleged right of inheritance in the property. But it is affirmatively shown by the allegations of plaintiffs' petitions that the title to the stock and real estate was never in their ancestor. In these circumstances, so far as the real estate involved in plaintiffs' demand is concerned, plaintiffs can not, under the provisions of Article 2239 of the Civil Code, require defendant, who by virtue of her marriage contract is in the position of a third person, to return the immovable property to their ancestor's succession. Eberle v. Eberle, 161 La. 313, 108 So. 549; Succession of Hogh, 193 La. 260, 190 So. 399. Plaintiffs' remedy, so far as the real estate involved in their demand is concerned, is to sue for the return of the money with which the real estate was purchased and not for the real estate itself. Succession of Hogh, supra.

But the legal principle applicable to the real estate is not applicable to the stock involved in plaintiffs' demand. The stock in question constitutes personal property and is not governed by the rule of law which prohibits the use of parol evidence to make out a title to immovable property. This distinction was pointed out by the Court in the case of Lockhart v. Dickey, 161 La. 282, 108 So. 483. In that case the

decedent in order to defraud his wife, from whom he was separated, purchased stock in a building and loan association and caused the certificates to be issued in the name of another woman. Although the certificates of stock had never been in the name of the decedent, the court gave the widow and heirs judgment for the stock holding, on parol evidence, that the transaction was a simulation for the purpose of covering up the husband's property and screening it from the knowledge and claim of his wife and children.

In conformity to the rule announced in Lockhart v. Dickey, we are forced to the conclusion that plaintiffs' petitions, so far as the certificate of stock is concerned, disclose a right or cause of action.

For the reasons assigned, the judgment appealed from is annulled so far as it sustains the exception of no right or cause of action to plaintiffs' demand that the purchase of 72½ shares of the capital stock of Hollander-D'Aquin, Inc., in the name of Mrs. Dorothy Blossman Hollander, be declared to be a simulation and the stock decreed to be community property and ordered returned to the succession of plaintiffs' deceased father, Harry G. Hollander, and the exception to that extent is overruled. In all other respects the judgment is affirmed. The case is remanded to the district court for further proceedings in accordance with the views herein expressed. Costs of this appeal are to be borne equally by the appellants and appellee, all other costs to await the final disposition of the case.