J2LOTTINGER, Chief Judge.
This is an appeal of the trial court’s grant of reimbursement against the estate of Effie Moore.
In 1981, Effie Moore (Effie) moved in with her adopted son, A.D. Moore, and his wife, Joan Moore (the Moores). The Moores allege that prior to the move, Effie agreed that *1041 she would leave her estate to A.D. in exchange for his taking care of her for the remainder of her life. In a will executed on Mareh 27, 1978, Effie bequeathed her entire estate to A.D. Moore. Effie died on January 1,1993. In a valid statutory will executed on Mareh 30, 1989, Effie revoked all prior wills and left her estate to the Effie M. Moore Great Grandchildren Trust.
On January 8,1993, Donna Moore Everett, the decedent’s granddaughter, filed a petition to probate the statutory will and to be confirmed as the testamentary executrix. Because no further action was taken by Everett, A.D. Moore filed a rule to show cause on July 28, 1993, why Everett should not be removed as executrix for failure to perform her duties. Following a hearing on the rule on August 30, 1993, the trial court ordered Everett to render a detailed accounting of all financially related activities, file a detailed descriptive list of all assets and liabilities of the succession and make a written acceptance or rejection of A.D.’s forced heirship claim.
Everett complied with the trial court’s order on September 28, 1993, by submitting a financial accounting, a detailed descriptive list and a rejection of A.D.’s forced heirship claim. The detailed descriptive list included numerous assets and contained a statement that Effie Moore’s liabilities were unknown due to A.D. Moore’s refusal to transfer any records of decedent’s liabilities. A.D. Moore filed a traversal of the detailed descriptive list on October 18, 1993, challenging the value assigned to Effie’s home and claiming that full and complete records of Effie’s liabilities were delivered to Everett’s attorney in Mareh of 1993. These liabilities allegedly included a debt owed to the Moores for funds spent on behalf of Effie during the time she resided in their home.
At trial on the merits, parol evidence was submitted to prove the oral agreement between A.D. Moore and Effie and to prove the amount of the debt owed. Prior to the testimony of Joan Moore, counsel for Everett objected arguing that Joan’s testimony was inadmissible |3under La. R.S. 13:3722. The trial judge conditionally overruled the objection and allowed Joan Moore’s testimony subject to a later determination as to whether or not it was admissible under § 3722. Joan Moore’s testimony was then offered to corroborate the documentary evidence submitted by the Moores and to prove the amount of the debt.
In written reasons for judgment, the trial judge found that the prerequisites of La. R.S. 13:3721 were satisfied and that parol evidence was admissible to prove the claim against the succession. Based on the uncon-troverted testimony of Joan Moore, whom the trial judge characterized as an extremely credible witness, the trial judge concluded that “the Moores [were] entitled to a judgment and a claim of reimbursement for all the expenses they incurred caring for Effie Moore.” The trial court ordered judgment in favor of A.D. Moore in the amount of $102,894.00 and recognized A.D. Moore as the forced heir of Effie Moore.
The main issues raised in Everett’s appeal are whether the trial court erred in finding that the prerequisites of La. R.S. 13:3721 were met and in finding that Joan Moore was a credible witness under La. R.S. 13:3722.
THE DEAD MAN’S STATUTE
Under La. R.S. 13:3721, commonly known as the Dead Man’s Statute, parol evidence can be admitted to prove a claim against the decedent only if a suit or other action is filed within one year of the decedent’s death. The purpose of the Dead Man’s Statute is to prevent stale and unfounded claims from being filed against the succession which could have been refuted by the decedent had he been alive. Succession of Otts, 400 So.2d 1175, 1177 (La.App. 1st Cir.1981).
If a claim is brought against the succession within one year of the decedent’s death, then parol evidence is admissible and the provisions of La. R.S. 13:3722 are applicable. Id. at 1177-78. If the one year requirement is not met, no parol evidence is admissible to prove the claim against the succession. Id. at 1178.
La. R.S. 13:3721 provides:
Parol evidence shall not be received to prove any debt or liability of a deceased *1042 person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
14(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
(4) The claimant has submitted to the succession representative a formal proof of claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.
The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder.
Under the facts of this case, we find that A.D. Moore satisfied the third category of La. R.S. 13:3721 by opposing a document which amounted to a tableau of distribution. Pursuant to the tidal court’s orders of August 30, 1993, Everett filed a document entitled “Detailed Descriptive List.” This document contained a list of all succession assets as well as liabilities. According to the Code of Civil Procedure, a detailed descriptive list indexes all succession property while a tableau of distribution lists succession debts. La.Code Civ. P. arts. 3136 and 3303. A.D. Moore’s traversal of the aforementioned “Detailed Descriptive List,” which contained a list of assets and liabilities, satisfied the third category of La. R.S. 13:3721.
Because A.D. Moore took action within one year of Effie’s death, parol evidence was admissible to prove his claim and the provisions of La. R.S. 13:3722 were applicable. La. R.S. 13:3722 states that when parol evidence is admissible under § 3721, the debt of the decedent “must be proved by the testimony of at least one creditable witness other than the claimant, and other corroborating circumstances.” In interpreting the requirements of La. R.S. 13:3722, the Louisiana Supreme Court has stated that:
[t]his provision implies that the witness whose testimony is necessary for proof of the claim against the deceased cannot be a co-owner of the claim. The purpose of the requirement is to eliminate the possibility of fraud and perjury by witnesses who have a direct pecuniary or proprietary interest in the claim. If the statute were construed to allow the co-owner of a claim to supply a necessary element of proof, the purpose of the requirement would |gbe defeated. Accordingly, we now hold that a person who has a direct pecuniary or proprietary interest in the plaintiffs claim against the deceased person may not serve as his one creditable witness.
Savoie v. Estate of Rogers, 410 So.2d 683, 687 (La.1981) (on rehearing).
Four witnesses testified at trial: A.D. and Joan Moore, Lamar Stafford, Joan’s son, and Everett. The testimony of Stafford and Everett was insufficient to prove the debt. While Stafford knew that Effie lived with the Moores, he never saw them make any payments on her behalf. Thus, the only remaining testimony which could prove the amount of the debt was that of the Moore’s.
A.D. Moore testified that he paid Effie’s bills and living expenses while she resided in his home. However, he repeatedly stated that he had no personal knowledge of the amount of the debt allegedly owed. He continually deferred to his wife, Joan Moore, as the sole person who handled the payment of all bills. A.D. Moore offered no testimony to prove the amount of the debt.
Joan Moore’s testimony was offered to prove the extent of the debt. She identified all checks, bills and invoices introduced into evidence. She stated that each of these documents were either bills or payments made on behalf of Effie. Joan Moore’s testimony was the only testimony offered tending to prove the amount of the debt. The question now before us is whether Joan Moore’s testimony was admissible under La. R.S. 13:3722.
*1043 While all documents and pleadings filed in this case were filed on behalf of A.D. Moore, we must recognize that Joan Moore is a “co-owner” of the claim asserted by her husband. At trial, the Moores admitted that all payments made on behalf of Effie came from their joint checking account. Numerous checks, photocopies of checks and carbon copies of checks drawn on the joint account were submitted into evidence. The joint account is presumed to be community property. La. Civ.Code art. 2340; Hebert v. Estate of Savoie, 499 So.2d 642, 643 (La.App. 3rd Cir.1986). A.D. and Joan are co-owners of the joint account. La. Civ.Code art. 2336; Hebert, 499 So.2d at 644. Although Joan Moore is not listed as a party plaintiff in this proceeding, she is a co-owner of the joint account as well as a co-owner of the claim for reimbursement to that account. Hebert, 499 So.2d at 644.
16As a co-owner with a direct pecuniary and proprietary interest in the claim, Joan could not be the one creditable witness to prove the existence of the debt. La. R.S. 13:3722; Savoie, 410 So.2d at 687. The trial court was in error in allowing Joan Moore to testify in support of the claim asserted by her husband against the succession.
Although the parol evidence was improperly considered by the trial court, we must still determine whether the documentary evidence submitted in the record substantiates the claim made by A.D. Moore. Succession of Otts, 400 So.2d at 1178. The documentary evidence consists of numerous checks, photocopies of checks and carbon copies of checks. The memo section on most of the cheeks reads simply “Effie Moore” or refers to various insurance policy numbers. There are no coordinating insurance policies, bills, invoices or other documents to substantiate that these checks were actually written to pay the debts of Effie Moore. With regard to the carbon copy checks, there was no showing, through bank statements or otherwise, that the original checks were actually negotiated. Furthermore, where invoices or receipts were submitted into evidence, there were no corresponding cheeks from the Moore’s joint account to show that payments were made. In the absence of Joan Moore’s testimony to substantiate the alleged payments and explain the checks, there is insufficient evidence in the record to prove the extent of the alleged debt.
Therefore, for the above and foregoing reasons, the part of the judgment of the trial court which awards A.D. Moore reimbursement from the estate of Effie Moore is reversed. In all other respects, the judgment is affirmed. The costs of this appeal shall be assessed against A.D. Moore..
REVERSED IN PART AND RENDERED.