BOBBY C. MOORE

VERSUS

SUCCESSION OF PATRICIA GAY BRUCE MOORE, ET AL.

**********
APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-73-11
HONORABLE C. STEVE GUNNELL, DISTRICT JUDGE

**********
**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, Marc T. Amy, Billy H. Ezell, and John E. Conery, Judges.

**Amy, J., concurs in part, dissents in part, and assigns reasons.**

**Conery, J., concurs in part and dissents in part for the reasons expressed by Judge Amy.**

AFFIRMED AND AMENDED, AS
REFORMED AND REVISED.

Kenneth O. Privat
Privat & Privat
P. O. Box 449
Crowley, LA 70527-0449
Telephone: (337) 783-7142
COUNSEL FOR:
     Defendants/Appellants - Succession of Patricia Gay Bruce Moore,
     Robin Ray Huff, and Cory Huff

Burleigh G. Doga
Burleigh G. Doga, Ltd.
P. O. Drawer 265
Crowley, LA 70527-0265
Telephone: (337) 783-8843
COUNSEL FOR:
     Plaintiff/Appellee - Bobby C. Moore

**THIBODEAUX, Chief Judge.**

The defendants, Robin Ray Huff and her brother, Cory Huff, and the Succession of Patricia Gay Bruce Moore ("Succession" or "Estate") appeal the judgment ordering the Succession to pay part of a tax lien and to reimburse the plaintiff, Bobby C. Moore, for federal and state taxes that he paid, or that were charged to him, on the separate income of the decedent, Patricia Gay Bruce Moore (Gay). The defendants also appeal the judgment denying their motion for a new trial. We affirm the judgment denying a new trial. As to the original judgment against the Succession, we affirm as to liability, and we revise and reform the judgment as to the parties cast in judgment.

## I.

### ISSUES

We must decide:

(1)     whether the trial court manifestly erred in ordering reimbursement to the surviving spouse for his payment of federal and state income taxes on the decedent's separate income;

(2)     whether the trial court manifestly erred in ordering the defendants to pay part of the remaining balance of an IRS tax lien levied against the surviving spouse; and

(3)     whether the trial court erred in finding La.R.S. 13:3721 inapplicable in this case, thereby denying the defendants' motion for a new trial.

## II.

## FACTS AND PROCEDURAL HISTORY

On October 5, 1983, Bobby and Gay Moore signed a document entitled "Marriage Contract." The document stated that the couple intended to marry on October 8, that the "intended husband and wife shall be separate in property," and that they "formally renounce[d] those provisions of the . . . Civil Code which establishe[d] a community of acquets and gains between husband and wife." Bobby was Gay's third husband, and Gay had retirement income, royalty and farm income, and immovable and inherited assets of her own when the couple was married. Bobby had no property other than his income.

Gay became ill with cancer and died intestate in July of 2007. Subsequently, her daughter from a previous marriage, Robin, filed a petition and was appointed administratrix of the Succession.

In August of 2007, before her appointment as administratrix, Robin signed jointly along with Bobby, a power of attorney authorizing CPA Julie Berry to represent them and file tax returns for 2005, 2006, and 2007. Robin signed the document, "Gay. B. Huff by Robin Huff" with the title, "executor."

Julie Berry had been Bobby and Gay's CPA from the time of their marriage in 1983, and had prepared the couple's tax returns from 1983 until Gay's death in 2007. She was accepted at trial by the defendants as a licensed CPA in the State of Louisiana, and she was the only expert to testify at trial.

Ms. Berry testified that she filed joint returns for the couple, which reduced their tax liability every year, but that Gay had separate property, and she managed her own income. The couple had a pattern of obtaining an extension each

2

year, delivering their paperwork to the CPA, and obtaining an installment loan to pay the taxes due on the return.

Ms. Berry was asked to calculate the taxes for the three years at issue and to provide a breakdown of the amounts due by Bobby on his income, and the amounts due by the Estate on Gay's income. Ms. Berry delivered faxes to Robin's attorney in August of 2008 requesting checks from the Estate totaling $69,563.58 for the decedent's share of the federal and state taxes on her separate income. Those checks were never delivered. In the meantime, Bobby had begun paying the taxes to the IRS in 2007. Ms. Berry's breakdowns showed that Bobby had paid $10,000.00 in 2007, over $15,000.00 in 2008, and over $11,000.00 in 2010 and 2011 on the federal taxes; that he had paid all of the state taxes for all three years, and had paid all CPA filing costs as well.

Robin hired a new CPA in 2009, who reported that the Estate only owed $54,968.00. Bobby, through his attorney, agreed to accept that amount, plus the Estate's share of the interest in order to avoid more penalties and interest. This payment did not occur.

The IRS transcripts indicate, and the court noted this fact, that the evidence showed that the Succession had paid a total of only $42,280.00 on the taxes for all three years, though it showed a tax lien of $49,500.00 on its final descriptive list when the Succession was closed in November of 2009. The defendants did not file any exhibits in this case.

In 2010, the IRS placed a $350.00 per month lien on Bobby's social security/retirement income. In April of 2010, Bobby filed formal proof of claim forms in the Succession, which included IRS statements showing $93,751.14 in federal taxes, interest, and penalties due from the parties for all three tax years.

In February of 2011, Bobby filed suit against Robin and Cory Huff and the Succession. At trial, Ms. Berry testified that Bobby had overpaid his portion of the taxes and that the balance on the lien against him was $20,000.00.

In July 2011, Robin and Cory Huff, filed a reconventional demand as plaintiffs, asserting that the Succession had paid the federal taxes due on Gay's separate income for all three years and that any remainder owed to the IRS in taxes, fees, or penalties, was Bobby's responsibility. The reconventional demand asserted that Bobby was liable to Robin and Cory Huff for all taxes *paid by them or the Succession* and asked the court to recognize that Robin and Cory Huff *and the Succession* had fulfilled their obligation in paying the federal income taxes. The trial court did not agree and rendered judgment in favor of Bobby Moore. While the trial court's judgment did not address the defendants' reconventional demand, it is well settled that when a trial court's judgment is silent with respect to a party's claim or an issue placed before the court, it is presumed that the trial court denied the relief sought. *Dixie Roofing Co. of Pineville, Inc. v. Allen Parish School Bd.*, 95-1526 (La.App. 3 Cir. 5/8/96), 690 So.2d 49.

Ultimately, the trial court ordered the Succession to reimburse Bobby $18,454.83 for his overpayments to the IRS and to the Louisiana Department of Revenue, and it ordered the Succession to pay $9,312.79 on the $20,000.00 balance on the tax lien. The court also ordered the Succession to reimburse and pay some of the CPA costs. All three defendants, the Succession, Robin Huff, and Cory Huff filed a motion for a new trial, which was also denied. While the judgments of the trial court were against the Succession only, all three defendants joined in filing this appeal.

## III.

### STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

A reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

Questions of law, such as the proper interpretation of a statute, are reviewed by the appellate court under the de novo standard of review. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36 (citations omitted).

## IV.

### LAW AND DISCUSSION

The defendants assert, in a conclusory manner and for the first time on appeal, the peremptory exception of no cause of action. They cite no code article and no jurisprudence in support of this assertion. In their four-page appellate brief, the defendants argue that Bobby Moore did not timely file his proof of claims or his suit against the Succession until after the Succession had closed. Without

5

specifically pleading prescription, they reference La.Code Civ.P. art. 3245[1] in a footnote. To that extent, the issue of prescription is not properly before us.[2]

With regard to the exception of no cause of action, it is authorized by La.Code Civ.P. art. 927. Its function is "to question whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition." *Industrial Companies, Inc. v. Durbin*, 02-665, p. 6 (La. 1/28/03), 837 So.2d 1207, 1213 (citations omitted). "The exception is triable on the face of the petition and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Id.*

Here, Bobby Moore's petition asserted that he was married to Gay at the time of her death; that they were separate in property pursuant to the marriage contract; that she owed federal income taxes on her separate property for 2005, 2006, and 2007; that the IRS had erroneously assessed taxes due by the succession to him and were compelling payment by him. The petition named three defendants, the Succession of Patricia Gay Bruce Moore, Robin Ray Huff, and Cory Huff. It asserted that Robin was the independent administrator of the succession; that Robin and Cory Huff were the sole heirs of the decedent; that they were personally, jointly, and solidarily liable for the debts of the succession; that

---

[1]Found in Book VI on Probate Procedure, La.Code Civ.P. art. 3245 provides for the suspension of prescription pursuant to the submission of a formal proof of claim during the administration of the succession.

[2]The exception of prescription is also a peremptory exception under La.Code Civ.P. art. 927(A); however, "[t]he court may not supply the objection of prescription, which shall be specifically pleaded." La.Code Civ.P. art. 927(B). While La.Code Civ.P. art. 2163 allows a party to raise the peremptory exception of prescription for the first time in the appellate court, it must be raised in a formal pleading and is not properly raised in oral arguments or by brief. *Natchitoches Parish Police Jury v. Natchitoches Sportsman's Ass'n*, 11-102 (La.App. 3 Cir. 6/15/11), 67 So.3d 1284, *writ denied*, 11-1559 (La. 10/7/11), 71 So.3d 315 (citing *Rapp v. City of New Orleans*, 95-1638 (La.App. 4 Cir. 9/18/96), 681 So.2d 433, *writ denied*, 96-2925 (La. 1/24/97), 686 So.2d 868, and *Tucker v. La. Dept. of Rev. and Taxation*, 96-2740 (La.App. 1 Cir. 2/20/98), 708 So.2d 782).

they had converted the assets of the estate to their own use; and that they had accepted the liabilities of the succession. The petition further asserted that the petitioner had filed formal proof of claims for $93,751.14 in the docket of the succession, that they were attached as exhibits, and that the defendants had refused to pay the taxes or to reimburse him for sums paid by him to the benefit of the succession.

While particular code articles were not discussed, clearly, the law provides remedies for reimbursement to spouses under the matrimonial regime statutes of Title VI at La.Civ.Code arts. 2335, et seq, which address community and separate property and obligations.[3] Likewise, the Louisiana Civil Code and the Louisiana Code of Civil Procedure provide numerous remedies for debts and obligations owed by a succession *and* its heirs and legal successors. For claims against successions, see generally, La.Code Civ.P. arts. 3001 through 3396.20. With regard to claims against the heirs and legal successors, Robin Ray Huff and Cory Huff, see La.Code Civ.P. art. 427, and La.Civ.Code arts. 934 through 968. [4] While neither the plaintiff, nor the defendants, nor the trial court discussed particular code articles with regard to the elements of a specific cause of action, we

---

[3]See for example, La.Civ.Code art. 2363, and its comments, which provide for separate obligations of a spouse.

[4]"An action to enforce an obligation, if the obligor is dead, may be brought against the heirs, universal legatees, or general legatees, who have accepted his succession, except as otherwise provided by law. The liability of these heirs and legatees is determined by the provisions of the Civil Code." La.Code Civ.P. art. 427. "Succession occurs at the death of a person." La.Civ.Code art. 934. "The possession of the decedent is transferred to his successors, whether testate or intestate, and if testate, whether particular, general, or universal legatees." La.Civ.Code art. 936. "A universal successor continues the possession of the decedent with all its advantages and defects, and with no alteration in the nature of the possession." *Id*. "Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole." La.Civ.Code art. 938(A). "Acceptance obligates the successor to pay estate debts in accordance with the provisions of this Title and other applicable laws." La.Civ.Code art. 961.

find that, under *Industrial*, 837 So.2d 1207, Bobby Moore's petition, standing alone, stated facts sufficient to overcome the exception of no cause of action.

When the peremptory exception of prescription is filed for the first time on appeal, however, "[t]he appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, *and if proof of the ground of the exception appears of record.*" La.Code Civ.P. art. 2163 (emphasis added). The defendants argue on appeal that the Succession was already closed at the time of Bobby Moore's petition. When we go beyond Bobby Moore's petition, the record reveals that this is true.

More specifically, the record reveals that Robin Huff began acting on behalf of the deceased even before she opened the Succession in September 2007, which is allowed under La.Civ.Code art. 938(A). This occurred in August of 2007 when she signed the power of attorney authorizing Julie Berry to determine the tax liability between Bobby and Gay. When Julie Berry submitted her request for funds to pay the Succession's portion of the taxes in August 2008, on Gay's separate property, the Succession was open, as Robin had obtained appointment as administratrix in September of 2007, then as independent administratrix in February 2008. While a succession is under administration, a creditor can submit his claim to the succession representative, and no particular form is required other than it be in writing, except for formal proof of claims under Article 3245. La.Code Civ.P. art. 3241.

While Julie Berry was a representative of the Succession *and* of Bobby Moore, her requests for the taxes (*and* for her own fees) were submitted in writing while the Succession was still under administration. "Any person having a

8

claim against the estate may enforce the payment or performance of the claim against an independent administrator in the same manner and to the same extent provided for the assertion of such rights in [the] Code." La.Code Civ.P. art. 3396.16. Additionally, under La.Code Civ.P. art. 734, the succession representative is the proper defendant to enforce an obligation against the deceased or the succession while the succession is under administration.

Here, however, while the petition of Bobby Moore appears to state a cause of action against the Succession, the record on appeal reveals that, on November 4, 2009, Robin and Cory Huff filed a "Petition for Possession and Discharge of Administratrix" and were granted a "Judgment of Possession" on the same date. Because Robin was the "independent administratrix" they did not have to provide an inventory, but were only required to file a sworn descriptive list. *See* La.Code Civ.P. arts. 3136, 3396.5, and 3396.18. The sworn detailed descriptive list showed an IRS lien of only $49,500.00 with no documentation. The heirs, Robin and Cory Huff, were put in possession of assets including immovable property in Youngsville, Louisiana, the cash proceeds of the sale of a house in Jennings, Louisiana, and accounts with Edward Jones, MidSouth Bank, Enco Resources, Inc., and Royalty Interest (CEL Properties, LLC), as well and furniture and fixtures of the deceased.

The November 4, 2009 "Judgment of Possession" predated the civil suit of Bobby Moore in 2011, and his formal proof of claims in April 2010. Therefore, even though Bobby had been paying taxes on his wife's separate property since 2007, and his tax representative had been trying to collect the wife's portion of the taxes since 2008, when Bobby filed his formal poof of claims and

9

his suit for reimbursement, the Succession, as a separate entity, had been terminated and was not a proper party defendant.

The judgment of the trial court casts the judgment against the Succession and omits the named defendants, Robin Ray Huff and Cory Huff. Pursuant to La.Code Civ.P. arts. 3061 and 3062, the judgment of possession recognized Robin and Cory Huff as the heirs of the deceased and sent them into possession of the property owned by the deceased at the time of her death. Therefore the heirs were the legal successors and proper parties for liability purposes. *See* La.Code Civ.P. arts. 427 and La.Civ.Code arts. 934, 936, 938, and 961, as previously discussed. Also instructive is La.Code Civ.P. art. 2672 on executory proceedings.[5] As shown above, and for the reasons below, the judgment must be revised to cast the named defendants, Robin Ray Huff and Cory Huff, in judgment.

In *Tunstall v. Stierwald*, 01-1765 (La. 2/26/02), 809 So.2d 916, the Louisiana Supreme Court revised an original trial court judgment to delete an improper party defendant and to add in its place the property party defendant. There, the trial was heard by the ad hoc judge assigned, and an original judgment was cast against the insured and "Phoenix/Travelers" Insurance Company. *Id.* at 919. A motion for a new trial, which did not address the naming of the defendant insurance company, was denied by the permanent division judge; and on the same date, the judge amended the original judgment based upon "a typographical" error. *Id.*

---

[5]Article 2672, entitled "Proceeding against heirs or legatees," provides in pertinent part: "When the original debtor is dead, and his heirs or legatees have accepted his succession, the executory proceeding may be brought against his heirs or legatees." La.Code Civ.P. art. 2672.

10

The amended judgment in *Tunstall* was cast against the insured and "Phoenix Insurance Company *and* Travelers Insurance Company." *Id.* (emphasis added). On review, the appellate court affirmed the amended judgment, finding that the trial court had found ambiguities and confusion concerning the Travelers policy booklet and the Phoenix declarations page and that it was not error to name both defendant insurance companies in the amended judgment. The Louisiana Supreme Court granted Travelers and Phoenix's joint application to review the correctness of the trial court's judgments. Ultimately, it denied the affiliated companies' exception of no right of action, after reinstating and revising the original judgment to delete the non-entity "Phoenix/Travelers" and to insert only "Phoenix Insurance Company" as the proper defendant insurer.

Essentially, the *Tunstall* court found that the trial court's change in the amended judgment was not proper because it named both insurance companies, but Travelers had never answered the suit nor been the subject of a default judgment; the record indicated that only Phoenix was the defendant's insurer. The court further found that it was error for the trial court to amend the judgment without a contradictory hearing on that issue, even though no party had requested a hearing, because the change was substantive, not typographical. Procedurally, the court noted:

> While the usual remedy of the appellate court in such a case is to vacate the amended judgment and reinstate the original judgment, the instant case will not be resolved by such a remedy. To reinstate the original judgment would be to allow a judgment to stand that holds a non-entity, i.e. Travelers/Phoenix in judgment. La.Code Civ.P. art. 2164 allows this court to "render any judgment which is just, legal and proper upon the record on appeal." Phoenix answered plaintiff's lawsuit, not Travelers. Accordingly, based on the record on appeal, we deem it just, legal and proper not only to vacate the

11

amended judgment and reinstate the original judgment, but also to revise the original judgment to delete Travelers Insurance Company, adding in its place the proper party defendant, Phoenix Insurance Company.

*Tunstall*, 809 So.2d at 920-21 (citations omitted).

Here, all three defendants answered the suit *and* filed a motion for a new trial. The motion for a new trial did not address the closing of the Succession or the naming of the defendants; it only addressed the issue of parol evidence at trial, discussed further below. Robin and Cory Huff's reconventional demand appeared to be brought in their individual capacities, but they sought relief on behalf of the Succession in some of the paragraphs and in the final prayer. The judgment closing the Succession was issued by the ad hoc judge. The trial on Bobby Moore's petition for reimbursement and help on the IRS lien, Robin and Corry Huff's reconventional demand, and all three defendants' motion for a new trial, were all tried to the division judge, who issued a judgment against the Succession, without casting judgment against the heirs, Robin and Cory Huff.

While this case might be remanded to correct the judgment, we find sufficient evidence in the record to provide relief and promote judicial economy. Accordingly, for all of the reasons discussed, and pursuant to *Tunstall* and La.Code Civ.P. art. 2164, we deem it just, legal, and proper to amend and revise the original judgment to delete the Succession as an entity, adding in its place the proper party defendants, Robin Ray Huff and Cory Huff.

The defendants further contend that the trial court improperly ordered reimbursement for taxes paid where the marriage contract did not address the payment of taxes. We disagree. The federal and state tax amounts paid by,

12

charged against, and ordered reimbursed to Bobby Moore were calculated on his wife's separate income, including income from royalties and from farm land.

Pursuant to La.Civ.Code art. 2339, a spouse may reserve the fruits and revenues of his or her separate property as separate property also.[6]

Here, the two-page marriage contract was entered into evidence. It complied with La.Civ.Code art. 2339, as it was in authentic form, notarized and witnessed, and it was received and filed by the Clerk of Court of Jefferson Davis Parish on October 5, 1983. While it did not specifically address the payment of taxes, it did specifically detail the couple's intent to retain separate ownership of their own movable and immovable property and the "respective free enjoyment of each of their revenues" whether acquired before or during the marriage.

"Under the regime of separation of property each spouse acting alone uses, enjoys, and disposes of his property without the consent or concurrence of the other spouse." La.Civ.Code art. 2371. Here, the record reveals facts supporting a longstanding pattern of maintaining their separate assets and income during the couple's twenty-four-year marriage, pursuant to their pre-marriage contract. It further reveals that the decedent failed to include some of her income when she

---

[6]**Art. 2339.  Fruits and revenues of separate property**

The natural and civil fruits of the separate property of a spouse, minerals produced from or attributable to a separate asset, and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property.  Nevertheless, a spouse may reserve them as his separate property as provided in this Article.

A spouse may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged.  A copy of the declaration shall be provided to the other spouse prior to filing of the declaration.

As to the fruits and revenues of immovables, the declaration is effective when a copy is provided to the other spouse and the declaration is filed for registry in the conveyance records of the parish in which the immovable property is located.  As to fruits of movables, the declaration is effective when a copy is provided to the other spouse and the declaration is filed for registry in the conveyance records of the parish in which the declarant is domiciled.

13

sent her tax information to the CPA, causing a higher tax liability. The trial court found that Bobby and Gay had separate assets, incomes, and separate debts. We agree.

The defendants further contend that the trial court improperly ordered reimbursement because a joint return obligates each to pay all. Again, we disagree. Bobby Moore introduced extensive evidence, including the marriage contract, IRS transcripts, faxes, letters, and tax breakdowns by the only expert at trial, CPA Julie Berry, who was also authorized by power of attorney to prepare the calculations. The evidence proved that Bobby had paid the taxes on his own income and part of the taxes on his wife's separate income.

Under a similar case, *Succession of Hollander*, 208 La. 1038, 1044, 24 So.2d 69, 71 (La.1945) (emphasis added), the fact that Bobby and Gay "filed their income tax returns as if the matrimonial community was in existence [*does not*] *have the effect of restoring the community* which was renounced under the terms of the marriage contract." Accordingly, here, it is the defendants who are the children of the deceased from a prior marriage, and they "have no interest in the manner in which the parties returned their incomes for the purpose of taxation. That is a matter which concerns the [f]ederal and [s]tate [g]overnments alone and can have no bearing on the issues involved in this case." *Id.*

The defendants also contend that the trial court erred in ordering the payment of $9,312.79 on the tax lien, plus penalties and interest accruing since trial. They characterize this amount as "future" taxes not yet due and that were discharged in bankruptcy. Again, we find no merit to this position. At the time of trial in September 2011, the tax lien against Bobby had a balance of approximately

14

$20,000.00. The judgment ordered the defendants to pay only Gay's portion of that lien, and it was for taxes due in 2007, clearly "past" not "future" taxes due.

As to the claim that there was a discharge in bankruptcy, there is no evidence in the record on this issue. There were no defense exhibits filed in this case. Procedurally, a claim of discharge in bankruptcy is also one of the peremptory exceptions allowed under La.Code Civ.P. art. 927(A). Under La.Code Civ.P. art. 2163, however, this court can only consider such an exception filed in the appellate court for the first time "if proof of the ground of the exception appears of record." Here, there is none.

Finally, the defendants filed a motion for a new trial asserting that, under La.R.S. 13:3721,[7] the testimony of plaintiff Bobby Moore and the couple's CPA of over twenty years, Julie Berry, was parol evidence and should not have been allowed at trial to prove the claims of Bobby Moore. After a hearing on the

---

[7]**§ 3721. Parol evidence to prove debt or liability of deceased person; objections not waivable**

Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:

(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;

(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;

(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or

(4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.

The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder.

15

issue, the court denied the defendants' motion for a new trial and issued a separate judgment on the new trial motion. The defendants now assert that the trial court committed reversible error in allowing parol evidence, thereby violating La.R.S.13:3721. We disagree.

The purpose of La.R.S. 13:3721, known as the *Dead Man's Statute*, is to prevent stale and unfounded claims from being filed against a succession when those claims could have been refuted by the decedent had she been alive. *See Succession of Moore*, 96-1268 (La.App. 1 Cir. 6/20/97), 696 So.2d 1040. In *Adams v. Carter*, 393 So.2d 253 (La.App. 1 Cir. 1980), *writ denied*, 398 So.2d 531 (La.1981), the court held that the Dead Man's Statute did not apply to a suit for reimbursement filed by the husband's estate against the wife's estate to recover money spent by the husband to enhance the wife's separate property. The court, therefore, found that parol evidence could be admitted to prove the claim for reimbursement filed more than a year after the wife's death.

Similarly here, the trial court found La.R.S. 13:3721 inapplicable. We agree. *Parol* is defined: "A word; speech; hence, oral or verbal. Expressed or evidenced by speech only; as opposed to by writing or by sealed instrument."[8] Here, the record was replete with written evidence supporting the claims of Bobby Moore. His testimony, and that of Julie Berry, basically authenticated the nineteen written documents placed into evidence by the plaintiff. Bobby testified that he had known his wife since age seven; that she was already the retired clerk of court when they married in 1983; that she had retirement income, a farm, stocks, and inheritance from her father; and that they entered into the marriage contract to keep

---

[8] Black's Law Dictionary, Sixth Edition, Centennial Edition (1891-1991), West Publishing Co., St. Paul, Minn. 1990.

their property separate. The marriage contract was placed into evidence. As previously discussed, it was dated three days before their marriage.

Mr. Moore further testified that he and his wife had filed joint returns for over twenty years to take legal advantage of the tax savings for married couples. He testified that he took his W2 to the CPA, Julie Berry, each year, and his wife gathered her own information for the CPA.

This was confirmed by the testimony of Julie Berry. She testified that she had been doing the couple's returns since 1983, and that they legally filed joint tax returns for tax savings but had separate property. Ms. Berry confirmed the kind of property owned by Gay Moore and confirmed that the decedent was definitely the manager of her own property. Her testimony identified the same pattern of business that Bobby had described. Ms. Berry identified the power of attorney that Bobby Moore and Robin Huff had signed, even before the Succession was opened, in 2007 authorizing Ms. Berry to separate out the tax liability of each party for the years 2005, 2006, and 2007, so that each party could pay its share of the taxes. The power of attorney, dated August 16, 2007, was entered into the record.

Ms. Berry further identified and explained all other documents prepared by her and entered into evidence. She discussed her methods in detail with regard to how she apportioned the taxes, year by year, discussing items over the phone, line by line with the IRS, so that she could properly bill each party for only each party's share of the taxes. Ms. Berry also testified that she had set up the monthly installments for Bobby Moore with the IRS when they put a lien on his income. All documents, calculations, worksheets, tax returns, and IRS transcripts showing all amounts paid by Bobby Moore and by Robin Huff, were placed into

the record. Ms. Berry identified all documentation showing that Mr. Moore had paid his wife's portion of state and federal taxes on her separate income.

In *Pierce v. Thompson*, 468 So.2d 1379, 1381 (La.App. 1 Cir. 1985), the court found that while La.R.S 13:3721 "prohibits the introduction of parol evidence to prove a debt of the decedent when the suit is brought more than a year after decedent's death . . . . It does not however prohibit proof of a debt by written evidence." The court further found that, even disregarding the testimony admitted at trial, the court was "satisfied that the plaintiff presented prima facie written evidence of the debt." *Id.* Similarly here, Bobby Moore did not have to rely on parol evidence to establish the amounts paid by him and owed by his deceased wife for taxes levied against him alone on his wife's separate income.

Accordingly, the statute is inapplicable, and the defendants' position is without merit.

V.

**CONCLUSION**

Based upon the foregoing, the trial court's judgment ordering reimbursement to Bobby Moore and ordering payment of part of the remaining tax lien is affirmed as to liability, and the judgment is amended and revised to cast the proper defendants, Robin Ray Huff and Cory Huff, in judgment. The judgment denying the defendants' motion for a new trial is affirmed.

All costs are assessed to the defendants, Robin Ray Huff and Cory Huff.

**AFFIRMED AND AMENDED, AS REFORMED AND REVISED.**

18

NUMBER 12-959

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

BOBBY C. MOORE

VERSUS

SUCCESSION OF PATRICIA GAY BRUCE MOORE, ET AL.

AMY, J., concurring in part and dissenting in part.

I agree with the majority to affirm the merits of this matter. However, I respectfully dissent from the majority opinion insofar as it recasts the judgment. Rather, I would affirm the judgment originally rendered.