STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-870


DEBRA CAPDEVILLE

VERSUS

WINN-DIXIE STORE #1473


**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 00-01646
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Glenn B. Gremillion, Judges.

AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.


Michael B. Miller
Miller & Miller
P. O. Drawer 1630
Crowley, LA 70527-1630
(337) 785-9500
Counsel for Plaintiff/Appellant:
    Debra Capdeville

**James M. Taylor**
**Jacqueline A. Romero**
**Taylor, Wellons, Politz & Duhe, APLC**
**1515 Poydras St., #1900**
**New Orleans, LA 70112**
**(504) 525-9888**
**Counsel for Defendant/Appellee:**
     **Winn-Dixie Store #1473**

GREMILLION, Judge.

The plaintiff, Debra Capdeville, appeals the judgment of the workers' compensation judge denying her request for penalties and attorney's fees after determining that the defendant, Winn Dixie Store #1433, failed to authorize required medical treatment. She further appeals the workers' compensation judge's refusal to allow her counsel to testify as to work performed in conjunction with her request for penalties and attorney's fees for Winn Dixie's failure to pay a mileage request. For the following reasons, we affirm in part, reverse in part, and render judgment.

## FACTS

Capdeville injured her head and neck when a ten-pound bag of dough fell and struck her as she walked into a freezer at work. She was initially treated by Dr. John Cobb, an orthopedic surgeon, who eventually referred her to Dr. James Pearce, a dentist specializing in temporomandibular disorders. Capdeville filed a disputed claim for compensation seeking workers' compensation benefits, medical treatment, and penalties and attorney's fees when Winn Dixie failed to provide her with workers' compensation indemnity benefits and medical treatment.

On March 26, 2001, an Interim Order was reached in which the parties agreed that Winn Dixie would pay temporary total disability benefits to Capdeville at the rate of $145.34 per week and would provide medical benefits, including all reasonable and necessary treatment by Dr. Pearce and other doctors, and the reimbursement of her prescribed medication. On April 21, 2001, a consent judgment was reached based on the parties' stipulations that Capdeville was injured as a result of a work-related injury. The judgment awarded her temporary total disability

1

benefits of $145.34 per week, based on her average weekly wage of $218, and all reasonable necessary medical treatment, including treatment by Dr. Pearce. It further awarded her $1,601.67 in past due weekly compensation benefits, $4,000 in penalties, and $10,000 in attorney's fees. A second consent judgment was rendered on April 21, 2003, in which Winn Dixie agreed to pay Capdeville $4000 in penalties and $2000 in attorney's fees due to its failure to authorize medical treatment for her by Drs. Bertuccini, Pearce, and Berard.

On October 12, 2004, Capdeville filed a Motion and Order for Penalties and Attorney's Fees based on Winn Dixie's failure to authorize medical treatment recommended by Dr. Pearce. She further alleged that she was not fully reimbursed for her mileage expenses associated with her visits to two doctors. Following a hearing on the motion, the workers' compensation judge gave oral reasons for judgment. She ordered Winn Dixie to authorize Dr. Pearce's treatment and further ordered either it or its third-party administrator, Sedgwick CMS, to inform Dr. Pearce's office of the authorization. However, she denied Capdeville's request for penalties and attorney's fees on this issue finding that the matter was reasonably controverted. She did award her $2000 in penalties and $1000 in attorney's fees due to Winn Dixie's failure to pay the mileage request. Judgment was rendered in this matter on April 14, 2005. This appeal by Capdeville followed.

**ISSUES**

On appeal, Capdeville argues that the workers' compensation judge erred in denying her request for penalties and attorney's fees due to Winn Dixie's failure to approve Dr. Pearce's recommendations. She further argues that the workers'

2

compensation judge erred in refusing to allow her counsel to testify as to the work performed by him with regard to her mileage request.

## MEDICAL TREATMENT

Capdeville first argues that the workers' compensation judge erred in finding that Winn Dixie reasonably controverted her request for authorization of medical treatment by Dr. Pearce.

Capdeville testified that she has seen Dr. Pearce twice and has been seeking follow-up treatment from him since her initial appointments. She stated that she called Dr. Pearce's office every day up until the beginning of 2004, checking on the status of her request from Winn Dixie, but stated that she never received it. She further explained that she called his office rather than going in person because she had gone there previously only to be refused treatment because Dr. Pearce did not yet have Winn Dixie's approval.

Capdeville introduced the depositions of Rena King and Karen Hebert into the record. King, an employee of Sedgwick, is the current adjuster of Capdeville's claim. Hebert is Dr. Pearce's office manager. Attached to these depositions were various letters pertaining to Dr. Pearce's request to Winn Dixie for authorization to continue Capdeville's treatment. The documents were as follows:

> 1) An August 23, 2000 letter from Debra Rawles, the Sedgwick adjustor handling Capdeville's claim at that time, to Dr. Pearce. The letter acknowledges that Dr. Cobb has referred Capdeville to him and authorizes him to see her for an initial visit only. An approval form from Dr. Pearce to Rawles, dated and signed by Rawles on the same date, authorizes approval for a new patient, limited examination and an orthopantomogram.

> 2) A September 21, 2000 letter from Dr. Pearce to Dr. Cobb. Dr. Pearce recommends a complete evaluation of Capdeville's masticatory

3

apparatus, as well as diagnostic mounted study models and a physical therapy evaluation. The letter was courtesy copied to Rawles, with an approval form requesting the described treatment.

3)      An October 18, 2000 letter from Rawles to Dr. Pearce requesting further information from Dr. Pearce as to whether Capdeville's condition was related to her cervical fusion and/or her work-related accident of 1998.

4)      An October 24, 2000 letter from Dr. Pearce responding to Rawles letter, in which he causally related her condition to her work-related accident.

5)      A November 20, 2000 approval by Rawles sent to Dr. Pearce approving his recommended treatment of Capdeville, on a form provided by Dr. Pearce.

6)      A January 22, 2001 letter from Dr. Pearce to Dr. Cobb. Dr. Pearce recommends that Capdeville undergo diagnostic splint therapy for six to nine months in an attempt to reduce the traumatic effects of bruxing and the dental malocclusions in order to find her a comfortable and stable jaw position and to eliminate her complaints of headaches and jaw pain. A copy of this letter was also sent to Rawles along with an authorization form for the splint therapy.

7)      A February 5, 2001 letter from Winn Dixie's attorney to Dr. Pearce. Counsel indicated that Winn Dixie had reviewed the doctor's reports of September 21, 2000 and October 24, 2000. It authorized Dr. Pearce's recommended medical treatment, specifically a complete evaluation of Capdeville's masticatory apparatus and a physical therapy evaluation. Counsel further requested Dr. Pearce to forward any further written requests for authorization of treatment and reports of treatment to Rawles.

8)      A March 2, 2001 letter from Dr. Pearce to Rawles. Dr. Pearce noted that Capdeville's diagnosis was bilateral TMJ capulitis, with the right worse than the left; myofacial pain of the muscles of mastication on the right side of her face, head, and cervical region; parafunctional activity such as bruxism, which was probably perpetuated by her current pain problem; right side coronoid tendonitis and a Class II, Division 2 dental malocclusion caused by missing and maloppressed teeth, a developmental problem. A causal connection between her diagnosis and her August 21, 1998 injury would probably be that her TMJ problem was secondary to her cervical problem, which was due to a bag falling and hitting her on the side of her head.

4

9) An April 30, 2001 fax from Dr. Pearce to Rawles. Dr. Pearce resubmitted his January 22, 2001 letter to Dr. Cobb regarding Capdeville's condition and his recommendation for splint therapy. He further resubmitted a form requesting approval for the splint therapy.

10) A March 21, 2003 letter from Winn Dixie's counsel to Dr. Pearce. Winn Dixie authorized continued medical treatment by Dr. Pearce, specifically an updated evaluation of Capdeville. It further requested that Dr. Pearce forward any further written requests for authorization of treatment and reports of medical/dental treatment of Capdeville to Linda Gardner, the current adjuster on her claim.

King did not become involved with Capdeville's claim until September 2003, and stated that she had no personal knowledge of anything occurring prior to that time, other than what was contained in the file. Since taking over the claim, she stated that no requests have been made for Capdeville to see Dr. Pearce. She was aware of the January 22, 2001 letter from Dr. Pearce to Dr. Cobb containing a breakdown of the procedures he was recommending for Capdeville's treatment, but did not know if that treatment was ever approved.

Hebert testified that Dr. Pearce received a letter from Rawles on August 23, 2000, authorizing Capdeville's initial visit for treatment. In response to Rawles' request for further information on October 18, 2000, she stated that Dr. Pearce sent the requested information on October 24, 2000. Rawles then authorized him to perform a complete evaluation for a possible TMJ disorder. Hebert testified that Dr. Pearce wrote to Dr. Cobb on January 22, 2000, updating him as to Capdeville's condition and recommending that she undergo upper and lower splint treatment for six to nine months. She stated that this letter was sent to Rawles, along with a form requesting authorization of the treatment. She said that she had no record of Rawles ever signing this request.

5

Hebert stated that Dr. Pearce sent another authorization form to Rawles requesting approval for the recommended splint therapy, after he received the February 5, 2001 letter from Winn Dixie's counsel. This letter approved a complete evaluation of Capdeville's masticatory apparatus and a physical therapy evaluation. She stated that Dr. Pearce never received approval for this treatment. Finally, she testified that Dr. Pearce received the March 21, 2003 letter from Winn Dixie's counsel authorizing further treatment of Capdeville, specifically an updated evaluation. She further discussed a notation on that letter made by their office, in which an employee talked to someone at Winn Dixie's counsel's office named Susan. However, we do not find this information relevant to our inquiry.

In her oral reasons, the workers' compensation judge found that Winn Dixie never approved Dr. Pearce's recommendations, evidently due to a breakdown in communication between either Rawles or Winn Dixie and Dr. Pearce. However, she finds that the matter was reasonably controverted and denied Capdeville's request for penalties and attorney's fees.

Louisiana Revised Statute 23:1201(F) provides that penalties and attorney's fees will be assessed against an employer who fails to timely provide compensation benefits or medical benefits to the injured employee. However, penalties and attorney's fees will not be assessed if the employer reasonably controverted the injured employer's claim or if the "nonpayment results from conditions over which the employer or insurer had no control." La.R.S. 23:1201(F)(2).

6

The term "reasonably controverted" was discussed in *Brown v. Texas La Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890, by the Louisiana Supreme Court:

> The phrase "reasonably controverted," . . . mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

The workers' compensation judge's decision to award penalties and attorney's fees is factual in nature and will not be reversed on appeal absent manifest error. *Id.*

After reviewing the record, we find the workers' compensation judge clearly wrong in denying Capdeville's request for penalties and attorney's fees, as a result of Winn Dixie's failure to authorize Dr. Pearce's recommended treatment. Winn Dixie has already either agreed to or been ordered to authorize the treatment by Dr. Pearce on three different occasions. The present judgment by the workers' compensation judge is the fourth time this matter has been addressed. Winn Dixie has presented no evidence nor a valid reason for its failure to authorize the treatment, nor has it presented any evidence showing that its failure to authorize the treatment was due to conditions beyond its control.

Rather, we find that Winn Dixie's failure to authorize the treatment evolved from the state of flux surrounding the claims adjusters handling Capdeville's claim for Sedgwick. Rawles initially handled the claim, but at some point control

7

devolved onto Linda Gardner, and then onto King in September 2003. The documents attached to the depositions reveal that Dr. Pearce twice requested approval for the splint therapy, but this was never approved despite the fact that Dr. Pearce causally related Capdeville's condition to her work-related accident and Winn Dixie was thrice ordered to authorize all reasonable and necessary medical treatment recommended by him. As Winn Dixie's failure to authorize the treatment resulted from its own third-party administrator's inattention to the matter, and as Capdeville was required to wait three years before receiving the recommended treatment, we find that an award of penalties and attorney's fees is appropriate in this instance. Thus, we reverse the judgment of the workers' compensation judge denying the award of the same, and we now order, adjudge, and decree that judgment be rendered awarding Capdeville $2000 in penalties and $5000 in attorney's fees for Winn Dixie's failure to authorize the recommended medical treatment.

## COUNSEL'S TESTIMONY

In her second assignment of error, Capdeville argues that the workers' compensation judge erred by refusing to allow her counsel to testify with regard to work he performed on the issue of penalties and attorney's fees resulting from Winn Dixie's failure to reimburse a mileage request. We disagree. As stated by this court, in *Derouin v. Champion Insurance Co.*, 580 So.2d 1043 (La.App. 3 Cir.), *writ denied*, 585 So.2d 574 (La.1991), and by the second circuit in *Harvey v. B E & K Construction*, 33,475 (La.App. 2 Cir. 8/23/00), 770 So.2d 819, a trial court need not hear evidence pertaining to the time spent by counsel on a matter in order to decide the amount of attorney's fees to award, as the amount of work performed will be

8

obvious from the record.  Accordingly, this assignment of error is dismissed as being without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part.  We now order, adjudge, and decree that judgment be rendered in favor of the plaintiff-appellant, Debra Capdeville, awarding her an additional $2000 in penalties and an additional $5000 in attorney's fees as a result of Winn Dixie's failure to authorize recommended medical treatment.  The costs of this appeal are assessed 25% to Capdeville and 75% to the defendant-appellee, Winn Dixie Store #1433.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

9