STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-586


CHANSE CEASAR

VERUS

FLEXFORCE EMPLOYMENT PROFESSIONALS, INC. &
ZURICH AMERICAN INSURANCE COMPANY


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DIST. NO. 4
PARISH OF ST. LANDRY, NO. 21-06364
ANTHONY P. PALERMO, WORKERS' COMPENSATION JUDGE

**********

VAN H. KYZAR
JUDGE


Court composed of Van H. Kyzar, Charles G. Fitzgerald and Gary J. Ortego, Judges.


AFFIRMED IN PART AS AMENDED,
REVERSED IN PART, RENDERED, AND REMANDED.

Daren Sarphie
Timothy E. Benedetto
Workers' Compensation, LLC
3045 Ridgelake Drive, Suite 203
Metairie, LA 70002
(504) 838-8883
COUNSEL FOR PLAINTIFF/APPELLANT:
    Chanse Ceasar

Matthew D. Crumhorn
Rabalais, Unland & Lorio
70779 South Ochsner Boulevard
Covington, LA 70433
(985) 893-9900
COUNSEL FOR DEFENDANTS/APPELLEES:
    FlexForce Employment Professionals, Inc.
    Zurich American Insurance Company

**KYZAR, Judge.**

This is a workers' compensation case in which Chanse Ceasar (hereafter "Plaintiff") filed a claim against his employer, Flexforce Employment Professionals, Inc., and its workers' compensation insurer, Zurich American Insurance Company (hereafter collectively "Defendants"), asserting failures to timely reinstate disability benefits following Plaintiff's releases from jail, the incorrect payment of indemnity benefits, entitlement to penalties, attorney's fees, legal interest, and reimbursement of costs.[1] Following trial, judgment was granted in favor of Defendants and against Plaintiff, rejecting his claims for penalties and attorney's fees. The average weekly wage (AWW) was calculated to be $480.00, and Defendants were granted a reimbursement claim for overpayment of benefits in the amount of $17,145.53. Finally, each party was held responsible for the court costs they incurred. From this judgment, Plaintiff appeals. For the reasons that follow, we affirm in part as amended, reverse in part, render, and remand.

## DISCUSSION OF THE RECORD

Plaintiff was employed by Flexforce Employment Professionals, LLC, a temporary staffing company, and was assigned to work for Republic National Distributing Company, LLC. Plaintiff suffered a work-related back injury on July 17, 2020, while moving cases of liquor. Although Plaintiff did not immediately report his accident to his employer, he did inform a co-employee.

---

[1] We previously considered another issue in this case in *Ceasar v. Flexforce Employment Professionals, Inc.*, 23-512 (La.App. 3 Cir. 2/7/24), __ So.3d __ (2023 WL 461550), affirming a judgment of the WCJ dated June 15, 2023, denying penalties and attorney's fees but reversing his decision to uphold the OWC Medical Director's denial of requested treatment, finding that Plaintiff was entitled to the referral to a pulmonologist for the explicit purpose of clearing him for a pre-approved surgery on his back.

Plaintiff first sought medical treatment at Mercy Regional Medical Center/Acadian Medical Center emergency room on July 19, 2020, with complaints of back pain that he attributed to lifting heavy objects. He was diagnosed with lumbago with sciatica and prescribed medication. Plaintiff reported his accident and injury to Defendants on July 20, 2020. Defendants conducted an investigation, which included questioning a co-employee, and accepted the accident as being compensable.

Defendants scheduled Plaintiff to be evaluated by Dr. Silvia at the Acadian Walk-In Clinic on July 20, 2020. Dr. Silvia diagnosed Plaintiff with a lower back strain and spondylosis with radiculopathy of the lumbosacral region. Plaintiff was restricted to light work and to avoid lifting, bending, and squatting.

Workers' compensation benefits were initiated on July 31, 2020, in the amount $480.02 per week based on an AWW of $720.00. These benefits were terminated on August 19, 2020, because Plaintiff was incarcerated for a domestic disturbance in West Baton Rouge Parish from August 16, 2020, to August 29, 2020.

Defendants scheduled Plaintiff to be evaluated by Dr. Richard Harmon on September 2, 2020. Plaintiff presented with complaints of back pain, spasm, and decreased range of motion that originated with his July 17, 2020 work-related accident. He was prescribed medication for his back pain. Plaintiff returned to Dr. Harmon on September 29, 2020, and was prescribed a back brace and instructed to continue with his medications. Indemnity benefits that had been terminated due to Plaintiff's incarceration from August 16, 2020, to August 29, 2020, were not reinstated until September 25, 2020.

Because of a lack of improvement, Plaintiff chose to seek treatment on October 12, 2020, with Dr. Neil Romero, an orthopedic surgeon. Dr. Romero took

2

Plaintiff off work pending diagnostic testing. A lumbar MRI was performed on November 16, 2020, and revealed a paracentral disc herniation with an extruded fragment and annular fissure. Dr. Romero recommended lumbar injections and physical therapy. Plaintiff was deemed to be in too much pain for physical therapy, and the injections provided no relief. By April 7, 2021, Dr. Romero recommended surgery.

Plaintiff continued to receive indemnity benefits until he was incarcerated on April 10, 2021, for violation of a protective order. Indemnity benefits were suspended effective April 12, 2021. Plaintiff was released from jail on June 10, 2021. Although Defendants were advised of Plaintiff's release by his attorney, indemnity benefits were not reinstated.

On June 28, 2021, Plaintiff was once again incarcerated for domestic issues. Defendants were advised of the incarceration by Plaintiff's attorney. Plaintiff was released on August 3, 2021, and defense counsel was notified of the release on August 6, 2021. Indemnity benefits were not reinstated until January 16, 2022.

Defendants decided to have Plaintiff undergo a second medical opinion (SMO) with Dr. Chambliss Harrod, which was scheduled for August 23, 2021. Defendants were notified on August 20, 2021, that Plaintiff would be unable to attend the appointment because he had been admitted to Longleaf Hospital, a psychiatric facility.

The SMO was rescheduled for November 3, 2021. Plaintiff arranged transportation to the exam, however the medical transportation service confused the pick-up and drop off locations, and Plaintiff was unable to make the appointment.

A third appointment with Dr. Harrod was set for December 20, 2021. Following his examination, Dr. Harrod agreed with the need for surgery and that

3

Plaintiff's condition was related to his on-the-job accident. The December 25, 2021, report was faxed to Defendants' attorney on December 27, 2021. Defendants reinstated indemnity benefits for the periods of June 10, 2021–June 27, 2021 (two weeks) and August 3, 2021–January 17, 2022 (twenty-four weeks) on January 16, 2022.

Trial was held in this matter on February 6, 2023. The workers' compensation judge (WCJ) held that Plaintiff was not entitled to penalties and attorney's fees; that the AWW was $480.00; that Plaintiff was overpaid indemnity benefits and owed reimbursement to Defendants in the amount of $17,145.53; and that costs were to be borne by the party incurring them.

Plaintiff appeals this judgment asserting the following assignment of errors:

1. The [WCJ] committed legal error in finding that [Plaintiff's] average weekly wage should be based on a 40-hour presumption rather than the actual hours worked.

2. The [WCJ] committed legal error in its calculation of the indemnity overpayment and amount due to [Defendants.]

3. The [WCJ] was manifestly erroneous in finding that [Defendants] reasonably controverted [Plaintiff's] claims for the late payments of indemnity benefits upon his release from jail.

4. The [WCJ] erred in the language of the Judgment concerning an accident, course and scope, and injuries.

5. The [WCJ] committed legal error in denying [Plaintiff's] claims for penalties and attorney's fees.

6. The [WCJ] committed legal error in denying [Plaintiff's] claims for costs and legal interest.

**OPINION**

ASSIGNMENT OF ERROR NUMBER ONE

Plaintiff's first assignment of error addresses the trial court's calculation of his AWW.

4

In *Guidroz v. Walmart Stores, Inc.*, 21-777, pp. 5–6 (La.App. 3 Cir. 5/4/22), 339 So.3d 647, 651 (first two alterations ours), *writ denied*, 22-884 (La. 9/27/22), 347 So.3d 152, this court, in explaining the proper scope of appellate review, stated:

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review." *Banks* [*Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97)], 696 So.2d [551,] 556. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). "[I]f the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

"[W]hen legal error interdicts the fact-finding process in a worker's compensation case, the manifest error or clearly wrong standard of review no longer applies and *de novo* review of the matter is required." *Gaines v. Home Care Solutions, LLC*, 15-895, p. 9 (La.App. 4 Cir. 4/6/16), 192 So.3d 794, 801 (citing *Marti v. City of New Orleans*, 12-1514 (La.App. 4 Cir. 4/10/13), 115 So.3d 541), *writ denied*, 16-847 (La. 6/17/16), 192 So.3d 765.)

In *Nitcher v. Northshore Regional Medical Center*, 11-1761, p. 17 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1013, *writ denied*, 12-1230 (La. 9/21/12), 98 So.3d 342, the court stated, "The calculation of a claimant's average weekly wage is a factual finding subject to the manifest error-clearly wrong standard of review."

Louisiana Revised Statutes 23:1021(13) provides in pertinent part:

"Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:

(a) Hourly wages.

(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater[.]

5

Regarding the calculation of his AWW, Plaintiff testified that Flexforce is a temporary staffing agency, and he had no control over his job site, work schedule, or how long his job might last. Although he normally worked at least forty hours per week, there was no guarantee as to how many hours per week he would work.

Plaintiff's injury occurred on July 17, 2020. His wage statement reflects the following:

| Check Date | Reg HRS | OT HRS | Gross Wages |
|---|---|---|---|
| 7/2/2020 | 40 | 4 | $552.00 |
| 7/10/2020 | 40 | 14 | $732.00 |
| 7/17/2020 | 32.75 | 0 | $393.00 |
| 7/24/2020 | 40 | 12.25 | $700.50 |
| (week of accident) | | | |

The undisputed evidence establishes Plaintiff was paid on an hourly basis and was employed for forty hours or more and therefore would fall under the provisions of La.R.S. 23:1021(13)(a)(i). Plaintiff's hourly rate was $12.00 per hour, and his overtime rate was $18.00 per hour. The WCJ utilized the forty-hour presumption since Plaintiff did not work four full weeks prior to his accident and calculated Plaintiff's AWW to be $480.00 (40 x $12.00) and the compensation rate to be $320.00.

Under the forty-hour presumption, if a full-time, forty-hour per week employee works less than forty hours per week in the four full weeks prior to his accident, he is entitled to the greater presumption of forty hours per week. *See Hargrave v. State, DOTD*, 10-1044 (La. 1/19/11), 54 So.3d 1102.

In the present case, Plaintiff only worked three full weeks prior to his accident but he earned overtime in two of those weeks. In *Fusilier v. Slick Construction Co.*, 94-11 (La.App. 3 Cir. 6/1/94), 640 So.2d 788, the claimant had only been employed for three weeks before his injury, but he had over twenty hours of overtime in the

6

second and third weeks of his employment. The WCJ utilized the forty-hour presumption at the claimant's regular pay rate without regard to his overtime. In overturning the WCJ's method of calculating the AWW, this court stated:

> Under normal circumstances, a worker who completes four full weeks will have overtime considered in the average as well. However, as in this case, if four full weeks are not completed and a forty hour week is used, the claimant unfairly receives nothing for any overtime he might have worked.
>
> We believe the proper calculation is to divide the regular and overtime hours worked in the two weeks by two to determine the average of each worked in one week.

*Id.* at 792.

In *Vincent v. Justiss Oil Co., Inc.*, 94-329 (La.App. 3 Cir. 11/2/94), 649 So.2d 508, *writ denied*, 94-2869 (La. 1/27/95), 650 So.2d 242, the claimant, a drilling roughneck, had been employed for only ten days before his injury but had accrued 118 hours. The employer advocated that the claimant's hours should be divided by four to determine his AWW. This court rejected the employer's argument, noting it would be unjust and not supported by the statute. It would include time when the employee was not employed and not give him credit for his overtime. The AWW was calculated by averaging the hours the claimant worked per week for the two weeks. This equaled fifty-nine hours. The regular time wage was multiplied by forty hours, and his overtime rate was multiplied for the remaining nineteen hours to arrive at the AWW.

In *Davis v. Boise Cascade Co.*, 14-156 (La.App. 3 Cir. 10/1/14), 149 So.3d 331, the claimant worked at least forty hours in three of the four weeks prior to his accident. In the one week in which the claimant did not work at least forty hours, the evidence established that a power outage at the plant resulted in the plaintiff being sent home prior to working a full shift. The WCJ did not include this less than forty-

7

hour week in the AWW calculation since it was not a "full week". This court upheld the WCJ in excluding the week that was not a full week from the average weekly wage calculation. The defendant asserted that the forty-hour presumption should have been utilized to calculate the claimant's AWW, and the WCJ's interpretation of a "full week" was contrary to mandates of La.R.S. 23:1020.1(D)(2), which provides:

> Disputes concerning the facts in workers' compensation cases shall not be given a broad, liberal construction in favor of either employees or employers; the laws pertaining to workers' compensation shall be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee.

In rejecting the defendant's argument, this court stated: "We disagree, noting first that the dispute on this issue does not concern the 'facts' in this case. Rather, the WCJ considered the undisputed facts and then applied those facts to the express wording of 'four full weeks' as used in La.R.S. 23:1021(12)(a)(i)."[2] *Id.* at 336.

In the present case, the WCJ committed manifest error in his calculation of Plaintiff's AWW by ignoring the jurisprudence regarding overtime wages.[3] Plaintiff worked three weeks prior to his accident and accumulated a total of 130.75 hours. Dividing this total by three would equal an average of 43.58 hours worked per week. (40 hours x $12.00 (hourly wage rate) = $480.00.) To this should be added his overtime, 3.58 hours x $18.00 (overtime hourly wage rate) = $64.44. Therefore,

---

[2] Pursuant to 2013 La. Acts No. 337, § 1, La.R.S. 23:1021(12)(a)(i) was redesignated as La.R.S. 23:1021(13)(a)(i).

[3] *But see Juarez v. AJ Lazo Const., LLC*, 22-575 (La.App. 5 Cir. 9/20/23), 370 So.3d 1280 (the fifth circuit held that the enactment of La.R.S. 23:1020.1(D)(2) now mandates that the workers' compensation statutes are no longer to be construed in favor of the injured worker, and therefore, the AWW calculation should be pursuant to the actual language of La.R.S. 23:1021(13)(a)(i), which mandates using the average of the actual hours worked in the four full weeks prior to the accident, or forty hours, whichever is greater.)

Plaintiff's correct AWW would equal $544.44 ($480.00 + $64.44), with a corresponding compensation rate of $363.14.[4]

ASSIGNMENT OF ERROR NUMBER TWO

Plaintiff's second assignment of error involves the reimbursement to Defendants of indemnity benefits paid to Plaintiff at the incorrect rate. Plaintiff acknowledges that some reimbursement is due but contends that the total amount determined by the WCJ is incorrect because the WCJ utilized an incorrect AWW. We agree that the amount of reimbursement calculated by the WCJ is incorrect because his calculation of the compensation rate was incorrect.

When Plaintiff first started to receive indemnity benefits, the adjuster assigned to the case utilized the forty-hour presumption but incorrectly utilized the overtime rate of $18.00 per hour rather than the straight rate of $12.00 per hour to calculate the AWW. This resulted in an incorrectly calculated AWW of $720.00 and a compensation rate of $480.02. Following trial, the WCJ calculated the reimbursement owed by Plaintiff to be $17,145.53 by utilizing the incorrect compensation rate of $320.02.[5]

The compensation payment ledger reflects that Defendants paid Plaintiff at the incorrect rate of $480.02 until December 8, 2022, when they issued a check in

---

[4] *See also Henry v. Bolivar Energy Corp.*, 95-1691 (La.App. 3 Cir. 6/5/96), 676 So.2d. 681, *writ denied*, 96-1749 (La. 10/11/96), 680 So.2d 644 (claimant only worked two weeks with overtime before accident. Average weekly wage based on actual hours worked over those two weeks); *Soileau v. R&H Refractory Servs. Inc.*, 01-355 (La.App. 3 Cir. 10/3/01), 796 So.2d 903, *writ denied*, 01-2954 (La. 1/25/02), 807 So.2d 841 (claimant's AWW based on only one week with overtime.); *Sowell v. Process Equip.*, 06-1198 (La.App. 3 Cir. 2/7/07), 948 So.2d 1214, *writ denied*, 07-482 (La. 4/20/07), 954 So.2d 169 (claimant only worked three out of the past five weeks prior to the accident. Average weekly wage calculated by averaging total earnings for the three weeks actually worked).

[5] The WCJ utilized Defendants' calculation that Plaintiff was overpaid indemnity benefits at a rate of $160.02 per week ($480.02-$320.00=$160.02) for a total of $17,145.53.

9

the amount of $389.00 for the period of December 5 to December 11, 2022. The next payment was issued on December 13, 2022, in the amount of $320.02, which is the compensation rate utilizing the forty-hour presumption.

Based on the record, we are unable to determine the correct amount of reimbursement due Defendants. We are unable to determine why the check dated December 8, 2022, was in the amount of $389.00 or if the sums Plaintiff indicated he refunded to Defendants were credited against the total owed. As such, we remand to the WCJ for this determination utilizing the correct compensation rate.

ASSIGNMENT OF ERRORS NUMBERS THREE AND FIVE

Plaintiff's third and fifth assignments of error involve the same issue, that being whether the WCJ committed manifest error in rejecting Plaintiff's claims for penalties and attorney's fees.

Louisiana Revised Statutes 23:1201(F) provides in pertinent part:

> Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . .

> . . . .

> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

In *Gradney v. Louisiana Commercial Laundry*, 09-1465, p. 5 (La.App. 3 Cir. 5/12/10), 38 So.3d 1115, 1120, this court stated: "A workers' compensation judge

10

has great discretion in awarding penalties and attorney fees, and his determination should not be disturbed in the absence of manifest error." Further, in *Jackson v. Aramark Healthcare Services*, 17-503, p. 4 (La.App. 3 Cir. 2/7/18), 239 So.3d 878, 883, this court stated: "When an issue raised on appeal posits a question of law, the standard of review is de novo wherein the appellate court determines whether the lower court was legally correct."

In determining that Plaintiff was not entitled to an award of penalties and attorney's fees, the WCJ stated in his written reasons:

> The largest issue in this case was whether attorney's fees and penalties were owed for the failure to reinstate benefits in this case. It's important to note that Mr. Ceasar was employed by Flexforce, and that the accident alleged on July 17, 2020, was unwitnessed. There was also no report of the accident for three days.
>
> After that point in time, Mr. Ceasar was incarcerated on more than one occasion, and his benefits were stopped due to that incarceration. The issue becomes whether the benefits should have been reinstated on June 10, 2021, after one period of incarceration was over.
>
> After a review of the evidence in this case, noting that each time that Mr. Ceasar was incarcerated, there were questionable answers given by Mr. Ceasar as to the reasons for his incarceration. Mr. Ceasar gave different versions of incidents that happened to him with regards to various injuries that he sustained over the course of time and the reason that he was incarcerated. Mr. Ceasar is not credible.
>
> Due to all of the factors in this case, the Court finds that the defendant had an articulable and objective reason to deny benefits at the time it took its action in not reinstating the benefits. Therefore, the Court finds that no penalties and attorney's fees are owed.

The WCJ denied Plaintiff penalties and attorney's fees because he felt Plaintiff was "not credible," however the credibility of Plaintiff regarding the reasons why he was incarcerated are not relevant to the issues present in this case. There is no dispute Plaintiff suffered a compensable accident and remains disabled. Defendants conducted an investigation of Plaintiff's accident, which included

11

questioning a co-employee, and accepted the accident as being legitimate. The adjuster, Ashley Simmons, testified that Defendants did not dispute that Plaintiff sustained an on-the-job accident. Therefore, his credibility was not an issue in establishing that his injury was compensable.

As to the issue of disability, as early as July 20, 2020, Dr. Silva diagnosed Plaintiff with a low back strain and spondylosis with radiculopathy of the lumbosacral region. Plaintiff was restricted to light work and to avoid lifting, bending, and squatting. Plaintiff was never offered employment within these restrictions, and he testified that he would have been unable to perform work for Defendants with these restrictions. Subsequently, both the treating physician, Dr. Romero, and the Defendants' SMO physician, Dr. Harrod, agreed that Plaintiff was disabled and in need of surgery. Plaintiff's credibility is not an issue regarding his disability.

The credibility of Plaintiff regarding his claims for penalties and attorney's fees is not at issue as the facts are not in dispute regarding the failure of Defendants to timely reinstate Plaintiff's benefits following his release from incarceration. Defendants initiated workers' compensation benefits to Plaintiff on or about July 31, 2020. These benefits continued until August 24, 2020, when Defendants learned that Plaintiff had been incarcerated since August 16, 2020, in the West Baton Rouge Parish jail for domestic issues involving his girlfriend. This suspension was based on La.R.S. 23:1201.4, which authorizes the forfeiture of an employee's right to compensation benefits during any period of incarceration. After release from incarceration, the employee's right to claim compensation shall resume.

Plaintiff was released from jail on August 29, 2020; however, his compensation benefits were not reinstated. Defendants reinstated the benefits on or

12

about September 25, 2020,[6] which is when, they assert, they learned that Plaintiff had been released from incarceration and received documentation that Plaintiff was disabled. This argument fails to account for the fact that Plaintiff attended a medical exam by Dr. Harmon on September 1, 2020, that had been set up by Defendants' medical case manager. Dr. Harmon documented decreased lumbar range of motion and pain and prescribed medications for back pain and muscle spasms. Additionally, Plaintiff was still under the work restrictions assigned previously by Dr. Silva.

Defendants also assert other issues which they allege warranted a suspension of benefits, including the failure to submit to a medical exam, the failure to sign an LWC-WC-1121/Choice of Physician form, the failure to complete an LWC-WC-1020/Employee Monthly Report of Earnings form, all of which Defendants assert allowed for the suspension of benefits pursuant to La.R.S. 23:1121(B)(5).[7] However, as mentioned above, Plaintiff attended the exam with Dr. Harmon on September 1, 2020. Plaintiff signed the LWC-WC-1025 Employee Certificate of Compliance and the LWC-WC-1020/Employee Monthly Report of Earnings forms on September 5, 2020, and his attorney forwarded his letter of representation on September 6, 2020, which included a request to utilize Dr. Romero as the treating physician. Therefore, there was no articulable and objective reason to withhold Plaintiff's workers' compensation benefits until September 25, 2020, and it was manifest error for the WCJ to find otherwise.

---

[6] Benefits were paid for the period of August 31, 2020–October 4, 2020.

[7] This statute provides for the suspension of medical benefits until the employee signs a choice of physician form. Louisiana Revised Statutes 23:1124 authorizes the suspension of indemnity benefits if the employee fails to attend a medical examination scheduled by the employer.

13

While waiting to be examined by Dr. Romero, Plaintiff returned to see Dr. Harmon on September 29, 2020. Dr. Harmon provided Plaintiff with a back brace and instructed him to keep his orthopedic appointment with Dr. Romero. Plaintiff's first appointment with Dr. Romero occurred on October 12, 2020. Dr. Romero noted that Plaintiff had been struggling with significant lower back pain and radicular complaints since his accident on July 17, 2020. Dr. Romero ordered an MRI and placed Plaintiff on a no-work status pending the MRI. Plaintiff returned to Dr. Romero to go over the results of the MRI, which revealed a left paracentral disc herniation. Dr. Romero continued the no-work status pending treatment. By April 7, 2021, Dr. Romero was recommending surgery and that Plaintiff remain off work.

On April 10, 2021, Plaintiff was again arrested for violating a protective order placed against him by the same girlfriend that had been involved in the August 16, 2020 arrest. Defendants were notified of this arrest by Plaintiff's attorney on April 13, 2021, and Plaintiff's benefits were suspended. Plaintiff remained in jail until June 10, 2021, and Defendants were notified of Plaintiff's release by his attorney that same day.

On June 28, 2021, Plaintiff was once again arrested and incarcerated for domestic issues. Plaintiff was released on August 3, 2021. Defendants were notified of the release on August 6, 2021. Despite being advised of Plaintiff's release from jail, his compensation benefits were not reinstated.

On July 22, 2021, Defendants forwarded a letter to Plaintiff's attorney advising that they wished to have Plaintiff undergo an SMO with Dr. Harrod on August 23, 2021.

Defendants were notified on August 20, 2021, that Plaintiff could not make the SMO appointment because he had been admitted to Longleaf Hospital, a

14

psychiatric facility. Plaintiff indicated that the anxiety, depression, and stress of his ongoing fight with the workers' compensation carrier and having no income prompted him to admit himself to the facility.

The SMO was rescheduled for November 3, 2021. Unfortunately, Plaintiff was unable to attend the examination because the medical transportation service he had scheduled to transport him confused the pick-up and drop off locations.

A third appointment with Dr. Harrod was set for December 20, 2021. Following his examination, Dr. Harrod agreed with the need for surgery and that Plaintiff's condition was related to his on-the-job accident. The December 25, 2021 report was faxed to Defendants' attorney on December 27, 2021. Defendants reinstated indemnity benefits for the periods of June 10, 2021–June 27, 2021 (two weeks) and August 3, 2021–January 17, 2022 (twenty-four weeks) on January 16, 2022.

Ms. Simmons, Defendants' adjuster, admitted that her file provided no reason why Plaintiff was not paid for the period of June 10, 2021–June 27, 2021, and from August 3, 2021–January 16, 2022. On questioning by her attorney, Ms. Simmons did clarify that the need for a SMO was a reason the benefits were suspended. Indeed, Defendants assert they had an articulable and objective reason to withhold Plaintiff's compensation benefits, beginning June 10, 2021, until questions could be answered regarding his medical condition and disability by Dr. Harrod.

Louisiana Revised Statutes 23:1124 provides, in pertinent part:

> If the employee refuses to submit himself to an additional medical opinion regarding a medical examination at the behest of the employer or an examination conducted pursuant to R.S. 23:1123, or in anywise obstructs the same, his right to compensation and to take or prosecute any further proceedings under this Chapter may be suspended by the employer or payor until the examination takes place.

15

The initial appointment with Dr. Harrod was not set until August 23, 2021, and during this time Plaintiff remained restricted from work by Dr. Romero. Therefore, there was no reasonable basis to suspend Plaintiff's benefits during the period of time from June 10, 2021, to his rearrest on June 28, 2021, and from August 3, 2021 (release from jail) to August 23, 2021 (date of the first scheduled SMO). As such, penalties and attorney's fees are due.

Defendants also assert that no penalties or attorney's fees should be awarded to Plaintiff for the suspension of his workers' compensation benefits because he was prepaid indemnity benefits due to the overpayment of his compensation rate. This argument is without merit. Defendants did not realize that they had incorrectly calculated the compensation rate until December 2022. Defendants had no reasonable basis to withhold compensation for Plaintiff for extended periods when there was no question he was disabled as a result of an on-the-job accident.

Defendants finally assert that no attorney's fees should be awarded because Plaintiff did not submit an attorney fee sheet or other documentation showing the fees incurred through trial. This argument is also without merit. In *Capdeville v. Winn-Dixie Store No. 1473*, 05-870, pp. 8–9 (La.App. 3 Cir. 3/1/06), 923 So.2d 900, 905, this court stated: "[A] trial court need not hear evidence pertaining to the time spent by counsel on a matter in order to decide the amount of attorney's fees to award, as the amount of work performed will be obvious from the record."

We are mindful that "[t]he purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." *See Burns v. Interstate Brands Corp.*, 09-705, p. 7 (La.App. 3 Cir. 2/3/10), 30 So.3d 271, 277. Thus, we award Plaintiff the sum of $7,500.00 in attorney's fees.

16

In *Thibodeaux v. High Hope Care Center*, 23-94, pp. 2–3 (La.App. 3 Cir. 10/25/23), 373 So.3d 120, 123 (alteration in original), this court, in overturning the WCJ's failure to award the claimant penalties and attorney's fees for the denial of surgery to repair a shoulder injury sustained as a result of a workplace accident, stated:

> Louisiana Revised Statutes 23:1201(F) provides that a claimant is entitled to an award of penalties and attorney fees for an employer's failure to pay compensation or medical benefits unless the employer has reasonably controverted the claim. An employer reasonably controverts a claim when it provides sufficient factual and/or medical information to present an articulable and objective reason to deny payment at the time it took action. *Calhoun v. Sanderson Farms, Inc.*, 22-478 (La.App. 1 Cir. 12/16/22), 357 So.3d 354. Whether an employer reasonably controverted a claim is a question of fact that is subject to the manifest error standard of review. *Id.*; *Ducote v. Louisiana Indus.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843. "To avoid penalties and attorney[']s fees for the nonpayment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits." *George v. Guillory*, 00-591, p. 13 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1209, *overruled on other grounds, Smith v. Quarles Co.*, 04-179 (La. 10/29/04), 885 So.2d 562.

Having determined that Plaintiff is entitled to an award of penalties for Defendants' failure to pay compensation benefits following his releases from incarceration, we must decide how many penalties should be awarded. In *Ducote v. Louisiana Industries, Inc.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843, this court was called upon to decide whether a claimant was entitled to recover multiple penalties for each consecutive week the employer failed to pay indemnity benefits due to a clerical error that terminated the benefits. In determining that only a single penalty was due, this court explained:

> When presented with a claim for multiple penalties, the first circuit made the following observation:
>
> > From these cases, we can glean the following guidelines: bills from different medical providers can be

17

considered as separate claims; failure to authorize a surgery by a particular doctor can be considered a separate claim from other treatment costs by the same doctor; the mileage expense associated with treatment by a particular provider is part of the claim for payment of that provider's treatment; incorrect calculation of a benefit amount is a separate claim from the failure to actually pay benefits; and that reduction of a benefit amount constitutes yet another separate claim on which penalties may be imposed.

*Juracovich v. St. Anne Gen. Hosp.*, 04-1323, p. 4 (La.App. 1 Cir. 6/10/05), 916 So.2d 264, 266, *writ denied*, 05-1819 (La.1/27/06), 922 So.2d 552. Notably, in *Juracovich*, the first circuit opined "that only one penalty is due for the failure to pay compensation benefits, and [we] reject plaintiff/appellee's assertion that a separate penalty is due for each week compensation benefits remained unpaid." *Id.* at 267, n. 1.

The second circuit reached the same conclusion in *Player v. International Paper Co.*,39,254, p. 12 (La.App. 2 Cir. 1/28/05), 892 So.2d 781,789, wherein the court reasoned that "[a]lthough the *Fontenot* case allows the imposition of multiple penalties for multiple violations of workers' compensation benefits, we do not believe that it allows penalties for each and every week of missed benefits . . . ." Rather, "*Fontenot* allows penalties for each claim or 'demand for particular benefits.'" *Id.* (quoting *Fontenot* [*v. Reddell Vidrine Water Dist.*, 02-439 (La. 1/14/03)], 836 So.2d [14,] 25). Consistent therewith, the second circuit reached the same result in *Taylor v. Hollywood Casino*, 41,196 (La.App. 2 Cir. 6/28/06), 935 So.2d 293. Citing *Player*, the court in *Taylor* reiterated that although "La.R.S. 23:1201(F) allows multiple penalties [it] does not contemplate that a claimant can be awarded a separate penalty for each missed week of indemnity benefits." *Id.* at 299.

. . . .

This circuit has not yet addressed the specific issue presently before the court. However, previous decisions of this court involving multiple penalty claims are instructive. For example, in *Maricle v. Sunbelt Builders, Inc.*, 05-398 (La.App. 3 Cir. 11/2/05), 916 So.2d 1226, *writ denied*, 05-2506 (La.3/31/06), 925 So.2d 1261, the WCJ awarded the claimant a $2,000.00 penalty for the late payment of indemnity benefits. Noting that "the evidence showed that several weeks of compensation were later paid in a lump sum amount," this court affirmed the WCJ's award "[g]iven the untimely payment of these benefits." *Id.* at 1233.Thus, in that instance, despite the nonpayment of several weeks of compensation, this court affirmed a single $2,000.00 penalty.

Also instructive are the previous decisions of this court wherein we concluded that certain actions by the employer constituted a "single violation." This analysis, used in determining when multiple penalties are warranted, was noted with approval in *Fontenot,* wherein our supreme court noted the following:

> Exemplifying such ability is the Third Circuit's rejection of *Haynes's* request for certain medical expense payments in the present case. In *Haynes,* the appellate court correctly observed:
>
>> We reject *Haynes's* contention that separate penalties should have been awarded for each of the medical bills incurred at Cabrini Hospital on the date of the accident and for the February 1, 2000 visit to Dr. Genoff and the related travel expenses. LUBA's actions regarding the Cabrini bills are essentially a **single violation,** and its failure to pay the bill for the visit to Dr. Genoff and the related travel expenses is essentially a **single violation.**
>
> *Haynes,* 805 So.2d at 232.
>
> *Fontenot,* 836 So.2d at 26, n. 12 (emphasis added).

*Id.* at 846–47 (second and third alterations ours).

In the present case, we find that two separate penalties should be assessed. Initially, there was the failure to reinstate benefits following Plaintiff's August 29, 2020 release from jail until September 25, 2020. Defendants were aware by September 1, 2020, that Plaintiff had been released from jail, and therefore, were twenty-four days late in paying Plaintiff. As such, a penalty of $1,200.00 is owed.[8]

Regarding the failure to reinstate benefits following Plaintiff's June 10, 2021 release from jail until he was rearrested on June 28, 2021, and the failure to reinstate benefits following Plaintiff's August 3, 2021 release from jail, these constitute a

---

[8] Fifty dollars per calendar day for each day in which the compensation remained unpaid, not to exceed $ 2,000.00. La.R.S. 23:1201(F).

19

single violation such that a penalty $2,000.00 is assessed.[9] Therefore, a total of $3,200.00 in penalties are assessed against Defendants.

ASSIGNMENT OF ERROR NUMBER FOUR

Plaintiff's fourth assignment of error asserts that the WCJ erred with the language of the judgment concerning an accident, course and scope, and injuries. The judgment states: "IT IS ORDERED, ADJUDGED AND DECREED that there be a Judgment is [sic] granted in favor of Defendant, Flexforce Employment Professionals, Inc. and Zurich American Insurance Company, and against Claimant, Chance Ceasar, finding that [sic] accident occurred in the course and scope of employment."

During the hearing, Defendants' adjuster acknowledged there was no dispute that Plaintiff sustained an on-the-job accident. Defendants' SMO physician agreed that Plaintiff was disabled and in need of surgery as a result of his on-the-job injury. The WCJ stated in his oral ruling: "The Court, based on the totality of the evidence, finds that an accident occurred in the course and scope of employment and that Mr. Ceasar suffered injuries therefrom." Defendants did not address this assignment in their brief.

The judgment is obviously in-artfully drafted and confusing as there is no dispute that Plaintiff suffered an accident in the course and scope of his employment. Pursuant to La.Code Civ.P. art. 2164, which authorizes this court to render any judgment which is just, legal, and proper upon the record on appeal,[10] we amend the judgment to state:

---

[9] Plaintiff was not paid for these periods until January 16, 2022.

[10] *See Sid-Mar's Rest. & Lounge, Inc. v. State ex rel. Governor*, 14-52 (La.App. 5 Cir. 5/21/14), 142 So.3d 188, *writ denied*, 14-1292 (La. 9/26/14), 149 So.3d 267, (appellate court

20

**IT IS ORDERED, ADJUDGED AND DECREED** that there be Judgment in favor of Claimant, Chance Ceasar, and against Defendants, Flexforce Employment Professionals, Inc. and Zurich American Insurance Company finding that the accident occurred in the course and scope of employment.

ASSIGNMENT OF ERROR NUMBER SIX

This assignment of error involves the failure of the WCJ to award Plaintiff costs and legal interest.

In *LeJeune v. State, DOTD*, 10-121, p. 6 (La.App. 3 Cir. 6/2/10), 40 So.3d 458, 462, *writ denied*, 10-1568 (La. 4/8/11), 61 So.3d 680, this court explained: "[A] party is entitled to legal interest on an award of penalties and attorney's fees if the party prayed for interest in his pleadings."

The WCJ did not award Plaintiff penalties or attorney fees. In that we have awarded penalties and attorney fees, and Plaintiff requested interest when he filed his claim form, we hold that Plaintiff is entitled to interest on his award of penalties and attorney's fees.

Regarding the assessment of costs, this is governed by La.R.S. 23:1317(B), which provides in pertinent part: "Costs may be awarded by the workers' compensation judge, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings."

The judgment in this matter provided that costs were to be borne by the party incurring them. We conclude that this order was within the WCJ's sound discretion.

---

amended trial court's order to specifically state that the restaurant owner acquired title to a portion of one of the disputed lots not specifically mentioned in the trial court's written judgment through acquisitive prescription); *Tunstall v. Stierwald*, 01-1765 (La. 2/26/02), 809 So.2d 916, (citing La.Code Civ.P. art. 2164, the supreme court revised a trial court judgment to delete an improper party defendant and to add in its place the proper party defendant); *Moore v. Moore*, 12-959 (La.App. 3 Cir. 4/10/13), 116 So.3d 18, *writ denied*, 13-1065 (La. 6/21/13), 118 So.3d 421, (this court, utilizing La.Code Civ.P. art. 2164, and to provide proper relief and promote judicial economy, amended a judgment to delete an incorrect defendant entity and to add in its place the proper party defendants rather than remand to trial court).

## DECREE

For the foregoing reasons, the judgment of the WCJ determining that Plaintiff's AWW was $480.00 and his compensation rate was $320.00 is REVERSED, with the correct AWW to be $544.44 and the compensation rate to be $363.14; the judgment of the WCJ as to the amount of overpayment due Defendants is REVERSED, and the case is REMANDED to the WCJ for a hearing to further determine to the correct amount of the overpayment due using the corrected compensation rate; the judgment of the WCJ denying Plaintiff an award of penalties and attorney's fees is REVERSED, and judgment is RENDERED awarding Plaintiff $3,200.00 in penalties and $7,500.00 in attorney's fees, along with interest on these awards; the judgment of the WCJ regarding its language as to the accident occurring in the course and scope of employment is AMENDED to reflect that judgment is rendered in favor of Plaintiff, Chance Ceasar, and against Defendants, Flexforce Employment Professionals, Inc. and Zurich American Insurance Company, finding that the accident occurred in the course and scope of employment; and the judgment of the WCJ decreeing that costs in this matter are to be borne by the party that incurred them is AFFIRMED. Costs of this appeal are to be split between the parties.

**AFFIRMED IN PART AS AMENDED, REVERSED IN PART, RENDERED, AND REMANDED.**

22